UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN KOBE, | No. C 09-2379 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| BEN CURRY, warden, | |
| Respondent. | |

## INTRODUCTION

Stephen Kobe, a prisoner incarcerated at the Correctional Training Facility in Soledad, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the court for review pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases. For the reasons discussed below, the action is dismissed.

## BACKGROUND

Kobe challenges a prison disciplinary decision. On September 8, 2006, he received a CDC-115 rule violation report charging him with refusal to perform work as ordered. A hearing was held on October 9, 2006, at which he was found guilty, but received no discipline. He was assessed *no* time credit forfeiture because the time constraints had not been met for the consideration of the CDC-115. He contends that the hearing officer did not give adequate consideration to his explanation for why he would not work. His explanation was that, even though he wanted the job and asked for it, he realized upon his arrival at the job site that it was an unsafe place because there were sharp instruments available to inmates in close quarters.

**DISCUSSION**

Interests that are procedurally protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and Washington v. Harper, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). The disciplinary decision for Kobe did not involve a change so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that state statutes or regulations narrowly restrict[1] the power of prison officials to impose the deprivation and that the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. An interest of "real substance" will generally be limited to freedom from

---

[1] A state most commonly restricts the power of prison officials by establishing "substantive predicates" to govern official decisionmaking, i.e., "particularized standards or criteria to guide the [s]tate's decisionmakers," and then requiring, "in explicitly mandatory language," that if the substantive predicates are met, a particular outcome must follow. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461-64 (1989).

After Sandin, several cases suggest that the language of state statutes and regulations should play little, if any, role in the inquiry into the existence of a protected, state-created liberty interest. As the Supreme Court recently put it, after Sandin, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (quoting Sandin, 515 U.S. at 484) (finding state-created liberty interest in avoiding assignment to "supermax" prison without discussing language of state regulations); see also Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) ("focus of the liberty interest inquiry" is whether condition is atypical and significant hardship in relation to ordinary incidents of prison life); Neal v. Shimoda, 131 F.3d 818, 829 (9th Cir. 1997) (looking only to whether the deprivation suffered is an atypical and significant hardship on the inmate, and not to statutory language); Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996) (implying that Sandin reformulated working definition of liberty interest to include only "real substance.") While there may be some uncertainty as to whether Sandin has eliminated the requirement that state law narrowly restrict the power of prison officials to impose the deprivation, there is no doubt that there must be an interest of real substance to determine that an inmate has a right to due process before being deprived of that interest.

restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." Sandin, 515 U.S. at 484, 487.

Here, Kobe was found guilty of the charge of refusing to perform work as ordered, but received no term in disciplinary housing and received no time credit forfeiture. The disciplinary decision of guilt that was unaccompanied by any discipline simply did not cause a deprivation of a liberty interest of real substance. Kobe therefore had no federal right to due process in the disciplinary proceedings. Without a federal right to due process, the prisoner cannot state a claim for a due process violation, regardless of whether it is presented in a habeas petition or in a § 1983 civil rights complaint.

Any effect the CDC-115 might have on parole consideration is too speculative to support a due process claim. Sandin determined that the possible effect of a disciplinary decision on parole consideration did not show that the disciplinary decision would inevitably affect the duration of the plaintiff's sentence. See id. at 487. State law did not require "the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, . . . even though misconduct is by regulation a relevant consideration. . . . The decision to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause" Id. [2] The impact of a disciplinary decision on a life inmate's later parole decision is too speculative to say that the decision has the inevitable effect on the duration of confinement that is necessary for federal due process protections to attach. Certainly, the existence of a CDC-115 – regardless of whether time credits are forfeited – does not help an inmate's chance for parole at a parole suitability hearing. However, the disciplinary record is but one of many factors that go into the evaluation of the parole applicant. California's regulations allow the Board of Parole Hearings (BPH) to consider many circumstances to determine whether the life inmate is suitable

---

[2]Although Sandin's discussion pertained to statutes and regulations in Hawaii, California's statutes and regulations also permit the parole authority to consider a wide variety of factors in deciding whether an inmate is suitable for parole. See Cal. Penal Code § 3041, 3046; 15 Cal. Code Regs. §§ 2280-2292.

3

for parole. See 15 Cal. Code Regs. § 2281(c), (d). Prison misconduct may be considered but is not the only circumstance, nor even the paramount one, in determining parole suitability.

**CONCLUSION**

For the foregoing reasons, petition does not state a claim upon which relief may be granted. Leave to amend will not be granted because the defect in the petition is not a pleading defect and cannot be cured by amendment. The clerk shall close the file.

IT IS SO ORDERED.

DATED: September 29, 2009

_____
SUSAN ILLSTON
United States District Judge